UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA A. SMITH,

                                        No. 14-13098

              Plaintiff,                Magistrate Judge R. Steven Whalen

v.

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.

_____/

## OPINION AND ORDER

Plaintiff Angela A. Smith ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act. Before the Court is Plaintiff's Motion to Remand and Defendant's Motion for Summary Judgment. For the reasons set forth below, Defendant's Motion for Summary Judgment [Dock. #16] is DENIED and Plaintiff's Motion to Remand [Dock. #15] is GRANTED.

## I.  PROCEDURAL HISTORY

Plaintiff applied for SSI and DIB on January 13, 2012, alleging disability as of July 17, 2010 (Tr. 135-140, 141-149). Upon denial of the claim, Plaintiff requested an

administrative hearing, held on March 25, 2013 in Livonia, Michigan (Tr. 27). Administrative Law Judge ("ALJ") Dennis M. Matulewicz presided (Tr. 25). Plaintiff, represented by attorney Clifford Walkon, testified (Tr. 36-50), as did Vocational Expert ("VE") LuAnn Castellana (Tr. 50-54). On April 10, 2013, ALJ Matulewicz found that while Plaintiff was unable to perform her past relevant work, she could perform a significant range of other work (Tr. 20-22). On July 9, 2014, the Appeals Council denied review (Tr. 1-3). Plaintiff filed suit in this Court on August 12, 2014.

## II.   BACKGROUND FACTS

Plaintiff, born January 13, 1965, was 48 at the time of the administrative decision (Tr. 22, 135). She completed 11th grade and received nursing assistant certification in 2004 (Tr. 183). She worked previously as a care giver and baby sitter (Tr. 183). She alleges disability as a result of chest pain, atrial fibrillation, diverticulitis, back pain, and depression (Tr. 182).

### A.  Plaintiff's Testimony

*Plaintiff's attorney prefaced his client's testimony by acknowledging that she made $2,900 in 2011 after the alleged onset of disability, but noted that it did not amount to "substantial gainful activity"* (Tr. 32).

Plaintiff then offered the following testimony:

Plaintiff, single, had three grown children (Tr. 36-37). She lived alone, but received help cooking, cleaning, and grocery shopping from her 25-year-old daughter (Tr. 37). Plaintiff's own cooking activities were limited to using the microwave oven (Tr. 37). She

rarely accompanied her daughter on shopping trips due to the inability push a grocery cart (Tr. 38). Her son performed the yard work (Tr. 38). She currently received food stamps and Medicaid (Tr. 38). She did not have a driver's license because she was afraid to drive (Tr. 38). She relied on her sisters or children for transportation (Tr. 39). She avoided taking the bus due to her fear of falling (Tr. 39).

Plaintiff stood 5' 5" and weighed 165 pounds (Tr. 39). She had recently lost weight but did not know why (Tr. 39). She was unable to lift more than eight pounds (Tr. 39). She was unable to stand or sit for more than 30 minutes at a time (Tr. 39). She was unable to walk more than three blocks without experiencing pain (Tr. 40).

Plaintiff lost her job as a daycare worker in 2010 after she "almost dropped a baby" while taking a fall (Tr. 40). She attempted to resume work but resigned after taking a second fall (Tr. 41). She did not collect unemployment benefits (Tr. 41). Before becoming disabled she "went to church all the time" and "love[d] to clean" (Tr. 41). She no longer attended church due to her inability to sit for long periods (Tr. 42). She was able to keep doctors' appointments, but otherwise was not motivated to leave the house (Tr. 43). She did not experience problems concentrating (Tr. 43). She spent time watching inspirational programs on television and reading the Bible (Tr. 43). She had a computer at her home that belonged to her son but she did not know how to use it (Tr. 43).

Plaintiff experienced significant back and shooting leg pain (Tr. 44). On "bad" days, with medication, Plaintiff experienced level "seven-and-a-half" pain on a scale of one to ten

-3-

(Tr. 44). She was depressed as a result of her physical limitations and did not "like to be around people . . ." (Tr. 45). Aside from the back and leg pain, she had recently begun to experience hand cramping (Tr. 46). She had also been diagnosed with diverticulitis which caused stomach and flank pain (Tr. 46). She was able to read, write, balance a checkbook, and make change (Tr. 45).

In response to questioning by her attorney, Plaintiff stated that she took Vicodin daily for back pain (Tr. 48). She experienced the medication side effect of drowsiness (Tr. 50). Due to back and leg pain, she reclined five to six times a day for 25 minutes at a time (Tr. 48). An epidural steroid injection had not improved her condition (Tr. 48). She received psychological counseling every two weeks (Tr. 49). She experienced sleep disturbances (Tr. 49). She avoided going out because she was embarrassed to fall in front of others (Tr. 50).

### B. Medical Records

#### 1. Treating Records

In February, 2010, Hazem Samir, M.D. found no abnormalities of the spine (Tr. 273). April, 2010 treating records note a diagnosis of depression and symptoms of anxiety (Tr. 236, 277, 280). Plaintiff exhibited lumbar back tenderness but full strength in both legs (Tr. 277). Dr. Samir prescribed Vicodin (Tr. 278). In July, 2010, Plaintiff was prescribed Xanax for anxiety and referred for mental health treatment (Tr. 282). In September, 2010, Dr. Samir noted diagnoses of anxiety, irritable bowel syndrome ("IBS"), and constipation (Tr. 286). The following month, Plaintiff was prescribed Ultram (Tr. 292). February, 2011

-4-

treating records do not show back or leg pain (Tr. 296).

In May, 2011, Plaintiff sought emergency treatment for facial numbness and right leg pain (Tr. 244, 247). An ultrasound of the right leg and a CT of the brain were both negative (Tr. 248, 250, 266-267). She reported an improvement in symptoms after taking Valium (Tr. 245). September, 2011 treating records state that Plaintiff reported right leg and back pain (Tr. 300). Plaintiff also reported hand pain (Tr. 302). Range of motion studies were normal (Tr. 303). She was diagnosed with rheumatoid arthritis (Tr. 303). October, 2011 physical therapy records state that Plaintiff exhibited an antalgic gait but full strength in the lower extremities (Tr. 366). An MRI showed mild stenosis at L3-L4 and borderline stenosis at L4-L5 (Tr. 370). In December, 2011, Plaintiff reported low back pain but exhibited full strength in the lower extremities (Tr.  (Tr. 304-305).

January, 2012 psychological intake records note that Plaintiff experienced stress as a result of several traumatic deaths in her family, including the death of a niece in Plaintiff's care, the murder of Plaintiff's son, and the sudden death of her fiancé (Tr. 311, 315). Plaintiff noted that she was becoming "increasingly isolated from friends and family members" and "no longer engage[d] in previous activities (Tr. 311). Intake records state that Plaintiff appeared depressed with an appropriate affect (Tr. 313). Plaintiff stated that she was able to improve her mood by engaging in enjoyable activities (Tr. 315). She was assigned a GAF of 60[1] (Tr. 314). The following month, Plaintiff attributed her depression

---

[1]

A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate

in large part to her inability to work (Tr. 315). She reported that symptoms of anxiety were intermittent and denied social anxiety (Tr. 315). She indicated that she last worked in September, 2011 as a teacher at a day care facility (Tr. 317). She was assigned a GAF of 65[2] (Tr. 318). Physical therapy discharge records from the same month state that Plaintiff did not experience meaningful improvement in her back condition after six weeks of physical therapy (Tr. 364).

In March, 2012, Dr. Samir noted a limited range of lumbar spine motion due to back pain (Tr. 333). Dr. Samir recommended heat therapy, low back stretching and strengthening exercises (Tr. 333). He noted that a February, 2012 epidural steroid injection "made the pain worse" (Tr. 333, 362). The following month, Plaintiff denied radiation of the lower back pain (Tr. 335). An MRI of the lumbar spine showed a small disc protrusion at L3-L4 "causing mild left-sided spinal stenosis," a disc protrusion at L4-L5, and moderately severe degenerative changes at L5-S1 (Tr. 358-359). The study showed "no significant interval changes from an October, 2011 study (Tr. 359).

Dr. Samir's June 2, 2012 treating notes state the Plaintiff denied radiating pain (Tr. 337). On June 11, 2012, Dr. Samir opined that sciatica, fibromyalgia, and major depression rendered Plaintiff "completely disabled" with a "poor" prognosis (Tr. 322-323). In a separate

---

difficulty in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders--Text Revision,* 34 ("*DSM-IV-TR*" )(4th ed.2000).

[2]GAF scores in the range of 61-70 indicate "some mild [psychological] symptoms or some difficulty in social, occupational, or school functioning." *DSM-IV-TR* at 34.

evaluation completed on June 17, 2012, he found that Plaintiff was limited to lifting five pounds on an occasional basis and was unable to stand or walk for more than 20 minutes in an eight-hour period (Tr. 327-328). He found that she required five to ten-minute breaks as often as every half hour (Tr. 328). He found that Plaintiff's condition would result in absences more than four days each month (Tr. 328). He found that Plaintiff was unable to twist, stoop, crouch, or climb (Tr. 329). Dr. Samir opined that concentrational problems would interfere with Plaintiff's work on an occasional basis (Tr. 329). June 30, 2012 treating notes state that Plaintiff reported "acute worsening of chronic" back pain "aggravated with movement" with pain radiating into the lower extremities (Tr. 339).

The same month, treating psychologist Jennifer Kowalkowski found that Plaintiff experienced moderate difficulty understanding detailed instruction, adhering to a schedule, maintaining social appropriate behavior, and using public transportation (Tr. 325). Kowalkowski found that Plaintiff did not experience any other significant psychological limitations (Tr. 325). Kowalkowski found that Plaintiff's depression was precipitated by unemployment and health problems (Tr. 326). She observed that Plaintiff appeared "to be in significant amounts of pain that [was] not well managed . . ." (Tr. 326).

In July, 2012 Fadi M. Abuhmaid, M.D. examined Plaintiff, noting her report that she was "feeling fine" (Tr. 343). Dr. Samir's August, 2012 treating records again state that Plaintiff experienced acute, radiating back pain (Tr. 345). Treating notes from September and November, 2012 state that Plaintiff was diagnosed with sciatic neuralgia (Tr. 348-349).

-7-

December, 2012 treating records note that Plaintiff did not experience radiating pain (Tr. 352).

## 2.   Non-Examining Sources

On March 15, 2012, B.D. Choi, M.D. performed a non-examining assessment of Plaintiff's residual physical abilities, finding that she could lift 10 pounds frequently and 20 pounds occasionally; sit, stand, or walk for about six hours in an eight-hour workday; and push and pull without limitation (Tr. 62).  As to postural functioning, Dr. Choi found that Plaintiff was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 63).  Dr. Choi did not find further limitations (Tr. 63).

The same day, psychologist Jerry Csokasy, Ph.D. found that the conditions of depression and anxiety would not prevent Plaintiff from performing "simple/routine tasks on a sustained basis in a low stress environment (Tr. 64).  He found mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 61).

## C.  VE Testimony

VE Castellana classified Plaintiff's former jobs as a nurse's aide and babysitter as semiskilled at the medium exertional level and teacher aide/daycare giver, semiskilled and light[3] (Tr. 51).  The ALJ posed the following question, describing a hypothetical

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or

-8-

individual of Plaintiff's age, education, and work experience:

> [I]f you consider a sedentary [residual functional capacity], lift ten pounds maximum, five pounds frequently, ten pounds occasionally; sit six hours of an eight-hour work shift; stand and/or walk two hours of an eight-hour work shift; who should never use a ladder, scaffolds, or ropes and only occasionally use ramps or stairs, stoop, crouch, kneel, crawl, or balance; should avoid walking on uneven surfaces . . . avoid concentrated exposure to hazards, including dangerous and unprotected machinery or heights; only occasionally bend, twist, turn at the waist or neck; who can only perform simple unskilled work with an SVP: 1 or 2,[4] routine work that would not require changes or adaptions in work settings or duties more than once a month; work requiring only occasional contact with the general public; jobs without production quotas mandating a specific number of pieces per hour, or with a line coworker depending on claimant productivity; work that would only have occasional contact – interpersonal interaction or contact or discussion with coworkers. Could such a person perform any of the claimant's past work? (Tr. 51-52).

(Tr. 43). Based on the hypothetical limitations, the VE found that the individual would be unable to perform any of Plaintiff's former jobs but could perform the unskilled, sedentary work of a sorter/inspector (2,500 positions in the regional economy); assembler (2,500); and packager (2,000) (Tr. 53). The VE testified that if Plaintiff's testimony of pain, physical limitations, and the need to recline several times a day were fully credited, all work would be precluded (Tr. 53-54). The VE stated that her testimony was consistent with the information found in the *Dictionary of Occupation Titles* ("DOT") and *Selected*

---

carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

[4]Both Specific Vocational Preparation ("SVP") 1 and 2 are classified as unskilled work. SSR 00–4p, 2000 WL 1898704, *3 (December 4, 2000).

*Characteristics of Occupations*, the Bureau of Labor Statistics, and her professional experience (Tr. 53).

### D.  The ALJ's Decision

Citing the medical records, ALJ Matulewicz found that Plaintiff experienced the severe impairments of "adjustment disorder with depressed mood; generalized anxiety disorder; and lumbar degenerative disc disease, lumbar radiculitis, and sciatica neuralgia" but that none of conditions met or medically equaled a "listed impairment" under 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16).  The ALJ found that the conditions of IBS, cystitis, chest pain, atrial fibrillation, and diverticulitis were non-severe (Tr. 16).  He found that Plaintiff experienced mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 16-17).  The ALJ found that Plaintiff had the residual functional capacity ("RFC") for exertionally sedentary work with the following restrictions:

> [L]ift ten pounds maximally, five pounds frequently, and ten pounds occasionally; she can sit for six hours of an eight-hour workday and stand and/or walk for two hours of a workday; she can never use ladders scaffolds, or ropes; she can occasionally use ramps, use stairs, stoop, kneel, crouch, crawl, or balance; she must avoid walking on uneven surfaces; she must avoid concentrated exposure to hazards including dangerous and unprotected machinery or work at unprotected heights; she can occasionally bend, twist, and turn at the waist or neck; she is limited to simple, unskilled work with an SVP rating of 1 or 2; she is limited to occasional interpersonal interaction, contact, or discussion with coworkers; she is limited to routine work that does not require changes or adaptations in the work setting or duties more than once per month; she is limited to occasional contact with the general public; and she is limited to jobs that do not involve production quotas mandating a specific number of pieces per hour or with a down-the-line coworker depending on the

-10-

claimant's productivity (Tr. 17).

Citing the VE's testimony, the ALJ concluded that the RFC would allow Plaintiff to work as a sorter/inspector, assembler, or packager (Tr. 21).

The ALJ discounted Plaintiff's alleged degree of limitation. He noted that after Plaintiff was prescribed Vicodin in April, 2010, she did not report back pain until "late 2011" (Tr. 18). He noted that Plaintiff's anxiety was at most intermittent (Tr. 19). The ALJ gave "little weight" to Dr. Samir's June, 2012 opinion that Plaintiff required "five to ten minute rest breaks every 30 to 60 minutes," noting that Plaintiff's account of her own abilities exceeded Dr. Samir's assessment (Tr. 19). In contrast, the ALJ accorded "[a] good deal of weight" to psychologist Kowalkowski's opinion that Plaintiff's mental limitations were at most moderate (Tr. 20).

### III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either

-11-

way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

-12-

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### The Treating Physician Analysis

 Plaintiff contends that the ALJ's rejection of Dr. Samir's June, 2012 assessment is substantively and procedurally flawed.  *Plaintiff's Brief,* 5-11, 11-12, *Docket #15.*  She disputes the ALJ's finding that Dr. Samir's opinion was contradicted by her own testimony and the treating records.  *Id.* at 8-9 (*citing* Tr. 19).  She argues further that the ALJ erred by failing to articulate the factors to be considered in determining the weight accorded a treating source.  *Id.* at 11-12; 20 C.F.R. 404.1527(c).

 If the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight."  *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir.2009) (internal quotation marks omitted) (citing *Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir.2004); 20 C.F.R. § 404.1527(c) (2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)). In explaining the reasons for giving less than controlling weight to the treating physician opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the

-13-

"supportability of the opinion," (5) "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.

The failure to articulate "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir.2013); *Wilson,* 378 F.3d at 544–546 (6th Cir.2004)(citing § 404.1527(c)(2)). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir.2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, at 376 (citing SSR 96–2p, 1996 WL 374188, *5 (1996)).

Plaintiff takes issue with the finding that Dr. Samir's June, 2012 opinion reflected a greater degree of restriction than Plaintiff herself alleged. *Plaintiff's Brief* at 8-9 (*citing* Tr. 19-20). She notes that while the ALJ rejected her testimony of disabling limitation, he cited her testimony to discredit Dr. Samir's opinion. She contends, in effect, that the ALJ erred by rejecting her testimony in making the credibility determination but then cited the same testimony to reject Dr. Samir's findings. In addition, she argues that the ALJ did not comply with the procedural requirements of the treating physician analysis under § 404.1527(c) where he failed to discuss five of the six relevant factors.

-14-

Of course, the ALJ did not wholly reject Plaintiff's testimony, noting that he agreed "that [her] back pain" resulted in greater "exertional and postural restrictions" than those found in the March, 2012 non-examining assessment (Tr. 19-20, 62-63). And the ALJ partially credited Plaintiff's testimony by finding that she was restricted to sedentary, rather than light work as found by Dr. Choi (Tr. 17, 63).

As discussed above, an ALJ is required to articulate "good reasons" for discounting treating source opinion. *Wilson, supra,* at 544. As a general principle, while an ALJ is also required *consider* all of the six relevant factors when declining to accord controlling weight to a treating source opinion under § 404.1527(c), he is not required to articulate all of the six factors. *Owens v. Commissioner of Social Sec.,* 2013 WL 1304470, *2 (W.D.Mich. March 28, 2013)(*citing Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. Mar.16, 2011))("'Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include good reasons ... for the weight ... given to the treating source's opinion—not an exhaustive factor-by-factor analysis.'")(internal citations and punctuation omitted).

Yet, even within a legal landscape that affords some flexibility in and deference to an ALJ's assessment of the credibility of a treating doctor's opinion, there remain certain deficiencies in this ALJ's decision to reject Dr. Samir's opinion.

First, the ALJ rejected Dr. Samir's opinion in part because of claimed inconsistencies with the Plaintiff's testimony. The ALJ stated, "the Claimant's own testimony indicated a

greater RFC with the Claimant testifying she could lift up to eight pounds and stand for 20-30 minutes at a time and walk 3 blocks." (Tr. 19). Dr. Samir had opined that Plaintiff could lift five pounds only occasionally (i.e., no more than 1/3 of an 8-hour day)(Tr. 327). However, the ALJ overstates, if not misstates the alleged discrepancy. When asked what kind of weight she could lift waist-high from the table in the hearing room *at that moment*, Plaintiff estimated that she could lift a gallon of milk, which she reckoned to be about eight pounds (Tr. 39).[5] In contrast, Dr. Samir evaluated Plaintiff's ability to lift five pounds repeatedly *over the course of an eight-hour day*, finding that she could do so no more than 1/3 of a workday. Neither Plaintiff's testimony nor Dr. Samir's report supports a finding that Plaintiff can lift five pounds frequently, on a sustained basis, during an eight-hour day.

Likewise, the ALJ discounted Dr. Samir's opinion regarding the ability to stand and walk because the Plaintiff testified that she could stand for 20 to 30 minutes and walk three blocks (Tr. 19).[6] Again, Dr. Samir's assessment was based on Plaintiff's ability to stand and walk on a sustained basis, over the course of an eight-hour day, not at a single moment in time. At best, the parameters of the ALJ's question to the Plaintiff were ambiguous.

Finally, while Defendant is correct that an ALJ is not always required to individually

_____

[5] Not to make too fine a point of it, but a gallon of water, which equals approximately 3.785 liters, weighs approximately 3.78 kg, or 8.34 pounds. Because of its greater density, a gallon of milk weighs slightly more, but Plaintiff's estimate of 8 pounds was in the ball park.

[6] Plaintiff testified that she could sit or stand "[a]bout 20 minutes, sometime[s] 30. It varies." (Tr. 39-40).

-16-

articulate each of the factors, there must be some indication that he or she at least considered those factors. Here, there is no indication that the ALJ factored in the Plaintiff's very lengthy treating relationship with Dr. Samir, which spanned five to ten years (Tr. 327). *Wilson* requires a balancing of the factors if an ALJ declines to accord controlling weight to a treating source. *See Cole*, 661 F.3d at 937. To balance is to weigh, and some factors may be given more or less weight than others. The extraordinary length of the physician-patient relationship in this case would appear to merit more consideration, or at least more discussion, than is apparent from the ALJ's decision. It is also important that the Plaintiff, who has been treated by Dr. Samir for over five years, understand why his opinion was rejected. *Cole* at 940 (even if the ALJ reaches the same conclusion on remand, plaintiff "will then be able to understand the Commissioner's rationale and the procedure through which the decision was reached."). *See also Hensley*, 573 F.3d at 267 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion."). This case is remanded further consideration and evaluation of Dr. Samir's opinion, in light of all the evidence.

## VI.   CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment [Dock. #16] is DENIED and Plaintiff's Motion to Remand [Dock. #15] is GRANTED.   Judgment for Plaintiff will be entered under the fourth sentence of 42 U.S.C. § 405(g).[7]

IT IS SO ORDERED.


s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: September 21, 2015


### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 21, 2015, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen

---

[7] Sentence four of 42 U.S.C. §405(g) authorizes the "court to enter a 'judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.'" *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991)(citations omitted).

-18-